# PD-1142-15

## CASE NO 05-14-00441-cr

## IN THE

## COURT OF CRIMINAL APPEALS OF TEXAS

## IN AUSTIN

_____

**CHRISTOPHER MICHAEL DUNLOP**　　　　　　　**PETITIONER**

**VS.**

**THE STATE OF TEXAS**　　　　　　　　　　**RESPONDENT**
_____

## PETITION FOR DISCRETIONARY REVIEW

_____

On Petition for Discretionary Review from the Fifth District Court of Appeals in

Cause No. 05-14-00441-CR in Affirming Conviction in cause No. 296-82462-

2012 from the 296th District Court of Collins County, Texas.

_____

FILED IN
COURT OF CRIMINAL APPEALS

November 18, 2015

ABEL ACOSTA, CLERK

Christopher M. Dunlop

435 Merrimac court

Roselle, IL 60172

Pro se PETITIONER

**ORAL ARGUMENTS REQUESTED**

**1**

## Identity of Parties and Counsel

---

**JUSTICES:**          Before Justices Bridges, Fancis, and Lang
                        Opinion by Justice Lang

**TRIAL JUDGE:**       Honorable John Roach, Jr.

**APPELLANT–PETITIONER:**   Christopher M. Dunlop

**ATTORNEY FOR THE PETITIONER AT TRIAL:**

William H. Underwood

1413 Harroun Avenue
McKinney, TX 75069

**ATTORNETY FOR PETITIONER ON APPLEAL:**

William H. Underwood

1413 Harroun Avenue
McKinney, TX 75069

**APPELLEE-RESPONDANT:**   The State of Texas

**ATTORNEY AT TRIAL FOR THE STATE:**

Wes Wynne

Collin County District Attorney's Office

2100 Bloomdale Road, Ste 100
McKinney, TX 75071

**ATTORNEY ON APPEAL FOR THE STATE:**

John Rolater

Collin County District Attorney's Office

2100 Bloomdale Road, Ste 100
McKinney, TX 75071

# TABLE OF CONTENTS

Cover Page…………………………………………………………………..……….1

Identity of Justices, Judge, Parties, and Counsel..…………………….…………..….2

Table of Contents……………………………………………………………….…....3

Statement Regarding Oral Argument..…………………………………,………....4

Statement of the Case……………………………………………………………..…4

Statement of Procedural History………………………………………………….…5

Ground for Review……………………………………………………..…….........5

Statement of the Facts……………………………………………………….……….6

GROUND FOR REVIEW ONE…………………………………………...…….14
The appeals court erred in finding that the evidence was legally sufficient to sustain a conviction where there was no physical evidence that anyone was injured but the defendant himself. The suspicion of guilt was due to the defendant inflicting harm upon himself, but the complaining witness testified that she had drugged him. The appeals court erred because they only took into account the police offices testimony that both the complaining witness and the 911 callers written statements were consistent and therefore factual when the appeals court did not compare the original 911 call with the 911 callers written statement which is completely different. If they would have done that and considered all of the evidence they would have seen that the complaining witnesses testimony of how they were left alone for over an hour before they were even spoken to by the Plano police department then they would have known that the complaining witnesses falsified the police report as she stated on the stand.

GROUND FOR REVIEW TWO……………………………………………………...14
The trial appeals court erred in not taking into account all of the evidence as stated in GROUND FOR REVIEW ONE and noting that the defendant wordlessly cut his own throat in front of the Plano officers because he had been involuntarily drugged and not in his right mind as the complaining witness testified to drugging him during the trial.

Prayer of Relief………….....................…………………………………………...14

Certificate of Compliance...............................................................................15

## STATEMENT REGARDING ORAL ARGUMENT

Because this case presents novel issues this Court has not previously addressed, oral argument would be helpful. Argument would assist the Court because resolution of the grounds for review depends upon a detailed exploration of the facts of the cases. Further, oral argument would provide this Court with an opportunity to question the parties regarding their positions.

## STATEMENT OF THE CASE

Appellant, Christopher M. Dunlop, was charged by indictment with the felony offense of assault family violence by impeding the normal breathing or circulation of blood of Laura Free by applying pressure to Laura Free's throat or neck. [1] After a jury trial, Mr. Dunlop was acquitted of the 3rd degree felony offense of Assault by Impeding, but was convicted of the lesser-included Class A offense of Assault Causing Bodily Injury to a Family Member. [2] Mr, Dunlop was sentenced to 1 year incarceration in the county jail, but the sentence was suspended and Mr. Dunlop was placed on community supervision for 2 years. [3] This is a direct appeal from that conviction and sentence.

---

[1] (Clerk's Rat 11)

[2] (Clerk's Rat 77)

[3] (Clerk's Rat 78-80)

## STATEMENT OF PROCEDURAL HISTORY

The judgment of Petitioner's conviction was entered on March 18, 20 I4. Petitioner's notice of appeal was timely filed on April 10, 20I4, the Fifth District Court of Appeals its affirmation of conviction on July 31, 2015. Motion for rehearing was not filed in time due to appellant not being notified until 2 weeks after the verdict and was unware of his rights that he could have still requested a hearing Pro se 15 days after his counsels notification of the verdict.

## GROUND FOR REVIEW

The Fifth Court of Appeals affirmed the conviction in this case despite the lack of any physical evidence of wrongdoing and not considering the actual testimony of the complaining witness herself stating the charges were falsified because the complaining witness thought she and her daughter had killed the defendant by drugging him. The Fifth Court of Appeals did not discharge its duty of review to conscientiously and impartially apply the law of *Jackson v. Virginia,* 443 U.S.319 (1979) *and Brooki v. State,* 323 S.W.3d 893 (Tex. Crim. App. 20!0), to a fair consideration of all the evidence. *See Arcila v. State,* 834 S.W.2d 357, 360-61 (Tex. Crim. App. 1992).

## STATEMENT OF FACTS

In the early morning hours of July 11, 2012, Officers David Thornsby and Kevin Gendron of the Plano Police Department responded to a domestic disturbance call from a residence located at 3829 Carrizo Drive in Plano, Texas. [4] Upon arrival at the location, officers made contact with the 911 caller, Kirstin Reigelsperger, who allowed them entry into the home. [5] As soon as the officers entered the residence, they observed the suspect, Christopher M. Dunlop, wordlessly pick up a large kitchen knife, place the knife to his own throat, and make a deep incision in his neck. [6] Mr. Dunlop then went into a bedroom and shut and locked the bedroom [7] door. Officer Thomsby immediately ordered both of the females (Laura Free, the complaining witness, and Kirsten Reigelsperger, the 911 caller) to exit the house and go across the street to a neighbor's yard. [8] Eventually, the officers gained entry into the bedroom and medical treatment was started by Emergency Medical Technicians on Mr. Dunlop. [9]

_____

[4] (Rep.'s R. vol 3 at 128: 13-15); (Rep.'s R. vol 3 at 131: 6-10)

[5] (Rep.'s R. vol 3 at 136: 15-19); (Rep.'s R. vol 3 at 177: 23-178: 4)

[6] (Rep.'s R. vol 3 at 139: 2-10); (Rep.'s R. vol 3 at 181: 21-23)

[7] (Rep.'s R. vol 3 at 139: 22-25)

[8] (Rep.'s R. vol 3 at 142: 3-4); (Rep.'s R. vol 3 at 169: 10-19); (Rep's R. vol 3 at 186: 4-18)

[9] (Rep.'s R. vol 3 at 143: 19-144: 4)

During the estimated 30 minutes to an hour that Officers Thonsby and Gendron were attempting to gain entry into the bedroom and tend to Mr. Dunlop's injury, no contact was made with either Laura Free or Kirsten Reigelsperger by anyone from law enforcement. [10] In fact. Officer Gendron had no contact or interaction whatsoever with the complaining witness, Laura Free. [11] Once Mr. Dunlop had been stabilized and loaded onto a gurney for transport to the hospital, Officer Thomsby resumed contact with Laura Free and Kirsten Reigelsperger. [12] Officer Thomsby testified that Laura Free claimed that Mr. Dunlop had pulled her hair to the point that a chunk of her hair had come out of the backside of her scalp, and that she had been choked. [13] Officer Thomsby also stated that Laura Free had complained of pain in her head and neck area. [14] In his observations of Laura Free, Officer Thomsby stated that he observed no bruising or redness or scratches on her person the night of the incident. [15]

------------------

[10] (Rep.'s R. vol 3 at 157: 5-15); (Rep.'s R. vol 3 at 181:6-14) "

[11] (Rep.'s R. vol 3 at 186: 1-9)

[12] (Rep.'s R. vol 3 at 144: 14-22)

[13] (Rep.'sR.vol3 at l62: 2-8)

[14] (Rep.'s R. vol 3 at 145: 18-22)

[15] (Rep.'s R. vol 3 at 156: 1-4)

As part of his investigation, Officer Thornsby also had Ms. Free fill out a Voluntary Witness Statement (State's Exhibit 57) [16], an Assault Supplement Packet (State's Exhibit 57) [17], and a page detailing "background information" contained within the Assault Supplement Packet (State's Exhibit 59) [18]. When Laura Free appeared before the court, she stated her intention to assert her Fifth Amendment privilege. [19] The state's prosecutor, Wes Wynne, offered Ms. Free testimonial (use) immunity. [20] Judge John Roach, Jr. appointed counsel to advise Ms. Free in regard to her 5th Amendment rights and the Grant of Use Immunity offered to her by the prosecution. [21] Ultimately, Ms. Free accepted the Grant of Use Immunity and opted to testify. [22]

---

[16] (Rep.'s R, vol 3 at 146: 10-19)

[17] (Rep.'s R. vol 3 at 142: 21-25)

[18] (Rep.'s R. vol 3 at 148: 25-149:10)

[19] (Rep.'s R. vol 3 at 201: 13-16)

[20] (Rep.'s R. vol 3 at 203: 24-204: 19);(Clerk's R. at 65-66)

[21] (Rep.'s R. vol 3 at 205: 8-14); (Rep/s R. vol 3 at 206: 1-15)

[22] (Rep.'s R. vol 3 at 228: 13-23); (Clerk's R. at 67)

Prior to the trial, Ms. Free had also filled out an Affidavit of Non-Prosecution, and she flatly stated that she did not want to see Mr. Dunlop prosecuted for this offense as he did nothing wrong and she was afraid for having drugged him. [23] Ms. Free's trial testimony was contradictory to the and verbal statements she had provided to the police on July 11, 2012. In regard to written hair-pulling, Ms. Free testified that the hair-pulling in question was done in a playful, sexual manner and denied that it caused any pain, or if it caused pain, she stated it was the type of pain she had encouraged and wanted. [24] When pressed about the "chunk ofhair" that had reportedly been ripped out, she stated that only 4-5 strands of hair may have been pulled out, but that they also may have just fallen out on their own. [25] Ms. Free admitted that she had drugged Mr. Dunlop that night, without his knowledge, by pouring Hydrocodone cough syrup initially into a Four Loko, then later into a pot of coffee Mr. Dunlop was drinking. [26] She stated that she and her daughter, Kristen, decided to pour the rest of the bottle of hydrocodone cough syrup into Mr.

_____

[23](Rep.'s R. vol 4 at 21: 9-14)

[24] (Rep.'s R. vol 4 at 32: 17-33:9); (Rep.'s R. vol 4 at 84: 3-20)

[25] (Rep.'s R. vol 4 at 33: 10-24) (Rep.'s R. vol 4 at 34: 23-35: 24)

Dunlop's coffee because the first attempt at drugging him had no effect. [27] Ms. Free claimed to have fabricated the story about Mr. Dunlop assaulting her because she believed Mr. Dunlop had actually died from his injuries, [28] and because she was worried that she would now be forced to pay all the bills at the residence. [29] Ms. Free testified that not only had she fabricated the details of her written voluntary Witness Statement, she had also lied about her description of the night's events when she was verbally questioned by the police on July 11, 2012. [30] In regard to the allegation of hair pulling, in her written statement Ms. Free wrote that Mr. Dunlop "grabbed me by the back of the hair and yanked my head backward ripping out a fistful of my hair. [31] During her trial testimony, however, she denied that Mr. Dunlop ripped out a fistful of her hair, but she confirmed that Mr. Dunlop had yanked her hair and yanked her head backwards, and that she felt pain when he ripped her hair out. [33]

_____

[27](Rep.'s R. vol 4at37: 25-39: 24)

[28](Rep.'s R. vol 4 at 49: 18-24)

[29](Rep.'s R. vol 4 at 50: 3-22)

[30] (Rep.'s R. vol 4 at 51: 4-52: 14)

[31]State's Exhibit 58, Voluntary Witness Statement, page 3)

[32](Rep.'s R. vol 4 at 64: 16-25)

[33](Rep.'s R. vol 4 at 72: 17-18); (Rep.'s R. vol 4 at 73: 3-5)

In regard to the allegation of assault by strangulation, in her voluntary statement Ms. Free wrote, "he put his hands around my neck and squeezed; but I could still breathe, it was just a bit harder." [34] In her trial testimony, Ms. Free initially stated that Mr. Dunlop never put his hands on her neck. [35] Later, she clarified that Mr. Dunlop had put his hands on her clavicle area, trying to calm her down, but all she felt was the "heat from hands near my neck, but I could not state with certainty there was ahand on my neck." [36] When specifically asked whether her breathing was impeded, Ms. Free again stated that Mr. Dunlop did not have his hands around her neck. [37] "They were near my neck, and he never squeezed and impeded my air flow." [38] When the prosecutor questioned Ms. Free about the Assault Supplement Report she had filled out on the night of the incident, [39] Ms. Free again denied that Mr. Dunlop put his hands around her neck, and she further denied any pain associated with her neck or neck area." [40]

_____

[34](State's Exhibit 58, Voluntary Witness Statement,page 3)

[35] (Rep.'s R. vol 4 at 65: 3-4)

[36](Rep.'s R. vol 4 at 66: 1-10)

[37](Rep.'s R. vol 4at66; 25-67: 7)

[38](Rep.'s R. vol 4 at 66: 18-20)

[39](State's Exhibit 59,Assault SupplementReport)

[40](Rep.'s R. vol 4 at 72: 17-73:24); (Rep.'s R. vol 4 at 86: 14-24

On cross-examination, Ms. Free stated that she had lied to the police about the assault allegations concerning Mr. Dunlop because she and her daughter had drugged Mr. Dunlop, because they believed he was deceased or about to die, and because she feared she would be stuck in a lease she could not afford on her own." [41] She also stated that she had lied in the Victim's Assistance portion of the Assault Supplement Packet in order to qualify for victim's assistance money, and to allow her to terminate the lease." [43] Ms. Free stated that she concocted her fabricated story during the time period of "at least an hour" when she and Kirsten Reigelsperger were left unattended by the police." [44]

Ms. Free was shown all the photographs of her neck and body that were taken by the police the night of the incident." [45] Ms. Free confirmed that there was no discoloration or bruising depicted in any of the photographs." [46]

---

[41] (Rep.'s R. vol 4 at 79: 24-81:20); (Rep.'s R. vol 4 at 94: 19-95:5).

[42] (State's Exhibit 59, Assault Supplement Report)

[43] (Rep.'s R. vol 4 at 81: 12-82: 10)

[44] (Rep.'sR.vol4at82: 11-23)

[45] (State's Exhibits 2-4, 6-8,12 and 13)

[46] (Rep.'s R. vol 4 at 89: 19-92: 18)

Ms. Free stated that she lied about Mr. Dunlop assaulting her because of the"fear factor" of getting into trouble herself due to having drugged him." [47] She also stated that when she gets angry or upset, she tends to embellish and lie about the facts." [48]

Christopher Dunlop elected not to testify during the case in chief." [49] After closing arguments and deliberation the jury returned a verdict of Guilty on the lesser-included offense of misdemeanor assault. [50] However, the Charge of the Court submitted to the jury required a finding as to the manner and means of the misdemeanor assault, specifically, "by applying pressure to Laura Free's throat and neck." [51] Punishment was assessed by the court at 1 year in county jail probated for 2 years; completion of a batterer's intervention prevention program; completion of a psychological exam; no consumption of alcohol: no contact with Laura Free or her children; 100 hours of community service; and 30 days term and condition time with authorization for off-work hours. The court also made an affirmative finding of family violence. [52]

_____

[47](Rep.'s R. vol 4 at 87: 1-5)

[48](Rep.'s R. vol 4 at 108:11-14)

[49](Rep.'s R. vol 4 at 97: 13-21)

[50](Rep.'s R. vol 4 at 147: 15-19)

[51] (Clerk"s R.at 74)

[52] (Rep.'s R. vol 4 at 158: 5-17)

**GROUND FOR REVIEW NO. 1.RESTATED**

THE APPELLATE COURT ERRED IN FINDING THAT THE EVIDENCE IS LEGALLY SUFFICIENT TO JUSTIFY A FINDING OF GUILTY OF THE OFFENSE OF ASSAULT FAMILY VIOLENCE.

**GROUND FOR REVIEW NO. 2. RESTATED**

COMPLAINING WITNESS TESTIFIED OF FALSIFYING POLICE REPORT BECAUSE HER AND HER DAUGHTER DRUGGED THE DEFENDANT AND THOUGHT THEY KILLED HIM.

## PRAYER FOR RELIEF

For the reasons stated, the Petitioner was denied a fair trial in Cause No. 296-82462-2012. Therefore, Appellant prays that this Court grant his petition for discretionary review and upon reviewing the judgment entered below, reverse this Cause and dismiss the prosecution or remand it for a new trial.

Very Respectfully submitted,

Chris Dunlop
435 Merrimac ct
Roselle, IL 60172
Pro se

## CERTIFICATE OF COMPLIANCE

I, Chris Dunlop, Appellant, hereby certify that this document contains 2,837 Words, exclusive of the content excepted by Tex. R. App. Pro. 9.4(i)(3). This is a computer-generated document, and I have relied on the word count of the computer program used to prepare this document.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00441-CR

**CHRISTOPHER M. DUNLOP, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-82462-2012**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Lang
Opinion by Justice Lang

Christopher M. Dunlop appeals his conviction for misdemeanor assault involving family violence. *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (West 2011); TEX. CODE CRIM. PROC. ANN. art. 42.013 (West 2006). After a jury found Dunlop guilty, the trial court made an affirmative finding of family violence, assessed punishment at one year confinement, suspended confinement, and placed Dunlop on community supervision for two years. In two issues, Dunlop argues (1) a fatal variance exists between the manner and means alleged in the indictment and the injury proved at trial, and (2) because this fatal variance exists, the evidence is insufficient to support the conviction of misdemeanor assault involving family violence. We decide against Dunlop on both issues. We affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Dunlop was charged by indictment with the third-degree felony offense of assault involving family violence. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(B). The indictment states that on or about July 11, 2012, Dunlop did

> then and there intentionally, knowingly, and recklessly cause bodily injury to Laura Free, a member of the defendant's family, member of the defendant's household, and person with who defendant had and has had a dating relationship, by intentionally, knowingly, and recklessly impeding the normal breathing and circulation of the blood of the said Laura Free by applying pressure to the throat and neck of said Laura Free.

According to the record, at approximately 3:00 a.m. on July 11, 2012, Officers David Thornsby and Kevin Gendron, of the Plano Police Department, were dispatched to the home of Dunlop and Laura Free, Dunlop's girlfriend, in response to a 911 call placed by Free's daughter. After the officers arrived, Thornsby spoke with Free and her daughter. He testified that they seemed "very frightened," "very, very upset," "very scared," and "were crying." Both women described to Thornsby what had happened and voluntarily gave written witness statements. Thornsby testified that the statements made by Free and her daughter "were matching." He also stated that Free complained of pain to her "head and neck area." According to Free's witness statement from July 11, 2012, which was admitted into evidence, after she refused to go to bed at Dunlop's request, Dunlop "grabbed [her] by the back of the hair and yanked [her] head backward ripping out a fistful of [her] hair. He put his hands around [her] neck and squeezed but [she] could still breathe it was just a bit harder. He then told [her] he should just snap [her] neck."

At trial, Free recanted and stated that she had lied to the police on July 11, 2012. She testified that she had been the aggressor and Dunlop had never placed his hands on her throat or neck. Free stated that Dunlop did pull her hair, but he did so in a "sexual way," and "if it hurt, it was a pain that [she] wanted."

Following a plea of not guilty, the jury found Dunlop guilty of the lesser included offense of misdemeanor assault. The trial court made an affirmative finding of family violence, assessed punishment at one year confinement, suspended confinement, and placed Dunlop on community supervision for two years.

## II. LEGAL SUFFICIENCY & FATAL VARIANCE

In two issues, Dunlop argues that the evidence adduced at trial supports a conviction for misdemeanor assault only by means of pulling Free's hair, whereas the indictment alleges assault by means of "applying pressure to the throat and neck of [Free]." Therefore, Dunlop argues a fatal variance exists and renders the evidence insufficient to support the verdict. The State responds that no variance exists because the evidence is sufficient to support "the lesser injury alleged in the indictment, specifically, injury to the victim's neck."

### A. Standard of Review

In determining the sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone may be sufficient to establish guilt." *Dobbs*, 434 S.W.3d at 170 (citing *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013). The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses. *Id.* As such, the jury "can choose to believe all, some, or none of the testimony presented by the parties." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination." *Dobbs*, 434 S.W.3d at 170.

–3–

A "variance" occurs when there is a discrepancy between the allegations in the indictment and the proof at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). When reviewing a variance claim, the "'sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case.'" *Id.* at 253 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). This charge "'would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* at 253 (emphasis omitted) (quoting *Malik*, 953 S.W.2d at 240). To render the evidence insufficient to support the verdict, the variance must be "fatal," meaning "it is material and prejudices [the defendant's] substantial rights." *Id.* at 256–57.

## B. Applicable Law

A person commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE ANN. § 22.01(a)(1). "'Bodily injury' means physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8); *see also Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989) ("This definition [of bodily injury] appears to be purposefully broad and seems to encompass even relatively minor physical contacts so long as they constitute more than mere offensive touching.").

## C. Application of the Law to the Facts

Dunlop argues that because "the only uncontroverted testimony regarding an assault" was that Dunlop pulled Free's hair, the evidence is insufficient to support his conviction for assault by the means alleged in the indictment, "applying pressure to the throat and neck of [Free]." However, the testimony concerning pulling Free's hair was not the only evidence offered at trial.

–4–

According to Free's witness statement from July 11, 2012, which was admitted into evidence without objection, Dunlop "put his hands around [her] neck and squeezed but [she] could still breathe it was just a bit harder. He then told [her] he should just snap [her] neck." Thornsby testified that he spoke with Free and her daughter after the incident, and that both women gave "matching" accounts of the events that day. He also stated that both women seemed "frightened," "upset," and "scared" and that Free had complained of pain to her "head and neck area." *See Lane*, 763 S.W.2d at 786; *York v. State*, 833 S.W.2d 734, 736 (Tex. App.—Fort Worth 1992, no pet.) (concluding evidence was sufficient to support assault conviction when the record showed appellant "choked" complainant, which restricted her breathing and "scared [her] to death," and no evidence suggested appellant's actions were accidental or involuntary).

Although Free recanted at trial and stated she had lied to the police on July 11, 2012, the jury observed Free's demeanor and was entitled not only to reconcile any conflicts, but also to disbelieve her recantation. *See Chambers*, 805 S.W.2d at 461; *Michael v. State*, No. 05-12-00895-CR, 2013 WL 1729280, at *1–2 (Tex. App.—Dallas Apr. 22, 2013, no pet.) (mem. op., not designated for publication) (concluding evidence was sufficient to support appellant's conviction for assault of his wife when wife's recantation at trial conflicted with officer's testimony and wife's statements immediately following the assault). Contrary to Dunlop's argument on appeal, the evidence need not be uncontroverted to support his conviction. In fact, when the record supports conflicting inferences, we are required to presume that the jury resolved the conflicts in favor of the verdict and defer to that determination. *See Dobbs*, 434 S.W.3d at 170; *Chambers*, 805 S.W.2d at 461.

Viewing the evidence in the light most favorable to the jury's verdict of guilty, we conclude any rational trier of fact could have found beyond a reasonable doubt that Dunlop

"intentionally, knowingly, or recklessly cause[d] bodily injury" to Free "by applying pressure to [her] throat and neck," as alleged in the indictment. *See* TEX. PENAL CODE ANN. § 22.01(a)(1); *Chambers*, 805 S.W.2d at 461; *Michael*, 2013 WL 1729280, at *1–2; *York*, 833 S.W.2d at 736. Because we have concluded the evidence adduced at trial was sufficient to support Dunlop's conviction for misdemeanor assault family violence based on the manner and means alleged in the indictment, we also conclude there is no variance between the facts alleged in the indictment and the proof offered at trial. *See Gollihar*, 46 S.W.3d at 246; *Mitchell v. State*, No. 05-12-00211-CR, 2013 WL 3771374, at *5–7 (Tex. App.—Dallas July 16, 2013, pet. ref'd) (not designated for publication) (concluding the evidence was sufficient to support the jury's finding of sexual assault as alleged in the indictment, so there was no variance, despite the fact that the State's evidence also related to another means by which appellant may have assaulted the complainant). We decide against Dunlop on both issues.

## III. CONCLUSION

We affirm the trial court's judgment.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
140441F.U05

–6–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER M. DUNLOP, Appellant

No. 05-14-00441-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 296th Judicial District Court, Collin County, Texas
Trial Court Cause No. 296-82462-2012.
Opinion delivered by Justice Lang. Justices Bridges and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 31st day of July, 2015.